A99A0261. RUPERT v. THE STATE.
(520 SE2d 695)

RUFFIN, Judge.

A jury found Curly Rupert guilty of aggravated assault in the

shooting of Randy Mote.[1] Rupert appeals, contending that the trial court erred in allowing the introduction of character evidence and improper impeachment evidence. For reasons which follow, we affirm.

Zealpha Rupert, the defendant's wife, worked for the Georgia Building Authority. Randy Mote also worked for the Georgia Building Authority, but earned additional money doing odd jobs for co-workers and their family members. On several occasions, Mote worked for the Rupert family. The defendant knew Mote who, a few weeks before the shooting, had painted Rupert's bedroom. On April 6, 1996, Zealpha hired him to paint their kitchen.

After meeting at Home Depot, Zealpha and Mote returned to the Ruperts' house, and Mote began painting the kitchen. Shortly thereafter, Rupert returned home. According to his wife, he had been drinking and "was staggering, holding to the wall." Rupert went into a bedroom and came out approximately one hour later. There was conflicting testimony regarding what transpired next.

According to Mote, Rupert shot him in the leg, then accused him of being a burglar. Mote then grabbed a hammer from the dining room table and began hitting Rupert.

Zealpha, on the other hand, testified that her husband told Mote to leave and that when he did not comply, Rupert shot him in the leg. According to Zealpha, Rupert then turned and shot her in the leg. Zealpha claims that she tried to take the gun away from Rupert and that she asked Mote for help, at which time Mote began hitting Rupert with a hammer.

Rupert, testifying on his own behalf, claimed Zealpha and Mote were involved in an illicit relationship.[2] According to Rupert, several weeks before the shooting, he had caught the two naked in his bedroom in flagrante delicto. Thus, when he saw Mote at his house on April 6, he asked him to leave. Rupert testified that Mote then came toward him with a hammer, and he shot Mote. Rupert further testified that he and his wife began fighting over the gun, at which point both Rupert and Zealpha were shot in the leg. Rupert stated that he had not been drinking the day of the shooting.

Zealpha, Mote and Rupert were taken to Grady Hospital, where Detective Wright of the DeKalb County Police Department attempted to interview them. Although Wright was able to take statements from Zealpha and Mote, he did not attempt to interview Rupert because of the "very strong odor of alcohol" about him and because of his injuries.

---

[1] The jury acquitted Rupert in the shooting of his wife, Zealpha Rupert.
[2] Both Zealpha and Mote denied having an affair.

1. In his first enumeration of error, Rupert contends the trial court erred in allowing the State to introduce evidence of his use of alcohol. According to Rupert, the testimony of his wife and children regarding his chronic drunkenness placed his character in evidence. This claim of error lacks merit.

(a) First, Rupert complains that the trial court erred in admitting his wife's testimony. Zealpha's testimony regarding her husband's drinking was as follows:

"Q: How would you describe your husband's health? A: Bad. Go to the doctor regular, for alcoholic." Rupert did not object to this testimony.

"Q: What does [Rupert] do while he is at home, do you know? A: Sit around, drink all day." Rupert objected to this testimony on the grounds that Zealpha was out of the house during the day and, thus, had no basis for knowing what Rupert did.

"Q: When you come home, back when you and [Rupert] were living together, when you would come home and [Rupert] was staying at home, what condition would you find [him] in?" Rupert objected to this question on the grounds that it was too broad. The trial court overruled the objection, and Zealpha responded that Rupert would be "A: Drunk, laying on the floor, halfway out of the bed sometime." Rupert did not object to Zealpha's response, and the State continued to question her about his drinking, asking

Q: Would he have bottles of alcohol at the house?
A: All the time.
Q: What kind of alcohol was he drinking?
A: Any kind. All kind.
Q: Was he drunk every day?
A: Not drunk, drunk, but high drunk.
Q: Did he, to your knowledge, drink every day?
A: Every day.
Q: When you were home on the two days that you were off [from work], describe for the ladies and gentlemen of the jury what [Rupert] would do during that time that you were home?

At this point, Rupert objected to the State's question, arguing that it went to his character. However, the question did not specifically refer to alcohol use. The trial court overruled the objection, stating that the prosecutor "can ask that." The State asked the question a second time, and Zealpha responded that Rupert would

A: Just lay around the house drunk.
Q: Would he drink in the morning?

A: Morning to night. I get up, cut the grass, he still in the house laying out. Did all the work. He was in the house drinking.

Q: This — did this go on during the entirety of the 27 years you have been with [Rupert]?

A: No. About the last, probably last five years.

Q: Last five years it's gotten worse?

A: Got worse.

Rupert objected to the State's question on the grounds that it was leading, and the trial court sustained the objection.

Pretermitting whether the trial court erred in admitting this testimony, Rupert waived the error by failing to timely object. "It is well-settled in this state that it is too late to urge objections to the admission of evidence after it has been admitted without objection." *Anthony v. State*, 236 Ga. App. 257, 259 (511 SE2d 612) (1999). Although Rupert made one, belated objection to a question based on character, the objection was not made until after evidence of his drinking had been admitted without objection. Accordingly, Rupert has waived this objection. See *Matthews v. State*, 221 Ga. App. 129-130 (1) (470 SE2d 518) (1996). To the extent that Rupert objected on grounds other than character, his objections do not preserve the character issue for appellate review. *Howard v. State*, 233 Ga. App. 724, 729 (5) (505 SE2d 768) (1998). "Because [Rupert] failed to specifically object to the evidence on the ground that it impermissibly placed his character in issue, he may not raise that objection for the first time on appeal." (Punctuation omitted.) Id.

(b) Rupert also contends that the trial court erred in admitting into evidence the rebuttal testimony of his two children. After Rupert testified without objection that, prior to April 6, 1996, he did not have a problem with alcohol, did not drink excessively, and did not get drunk, the State called his two children, who testified that their father was drunk virtually every day from January through April 1996. Contrary to Rupert's contention, the trial court properly admitted this testimony to impeach Rupert's statements on direct and cross-examination. *Cook v. State*, 226 Ga. App. 113, 115-116 (3) (485 SE2d 595) (1997).

2. In two enumerations of error, Rupert asserts that the trial court erred in allowing improper impeachment evidence and in failing to grant a mistrial after the prosecutor attempted to impeach him by cross-examining him about a prior DUI conviction. Rupert objected to the State's line of questioning on this DUI conviction because it placed his character into evidence and because the State did not have a certified copy of the conviction.

Contrary to Rupert's contention, the trial court did not permit

the State to impeach him regarding his prior DUI conviction. Rather, the trial court sustained Rupert's objection to the State's questioning based upon the absence of a certified copy of the conviction and instructed the jury to disregard any testimony regarding the DUI conviction. As we said in *Wofford v. State*, 234 Ga. App. 316 (506 SE2d 656) (1998),

> [t]he extent of a[n] . . . instruction is within the discretion of the court, and when the improper remarks are cured by timely corrective action calculated to preserve the defendant's right to a fair trial, then we cannot say that the court abused its discretion in refusing to grant a mistrial.

(Punctuation omitted.) Id. at 318 (4). Accordingly, Rupert's claim of error on this point lacks merit.

*Judgment affirmed. McMurray, P. J., and Andrews, J., concur.*

DECIDED JUNE 29, 1999 —
RECONSIDERATION DISMISSED JULY 15, 1999

*Cynthia A. Price*, for appellant.
Curly Rupert, *pro se.*
*J. Tom Morgan, District Attorney, Jennifer M. Daniels, Robert M. Coker, Assistant District Attorneys*, for appellee.