A04A0224. JONES v. THE STATE.
(598 SE2d 65)

RUFFIN, Presiding Judge.

A jury found Tommie Jones, Jr., guilty of two counts of armed robbery. Jones appeals, challenging the sufficiency of the evidence. He also asserts that the trial court erred in prohibiting him from presenting alibi testimony, refusing to charge on an alibi defense, and admitting certain evidence. Finally, he claims that he received ineffective assistance of counsel at trial. For reasons that follow, we affirm.

1. On appeal from a criminal conviction, a defendant no longer enjoys a presumption of innocence, and we must construe the evidence in the light most favorable to the verdict.[1] "We neither weigh

---

[1] See *Williams v. State*, 259 Ga. App. 742, 743 (1) (578 SE2d 128) (2003).

the evidence nor determine witness credibility, but merely ascertain whether the evidence is sufficient to establish guilt beyond a reasonable doubt."[2]

Viewed in this manner, the evidence shows that, just before noon on January 15, 2002, a SunTrust Bank in Macon was robbed. A man walked into the branch, placed a white bag on the counter in front of teller Tamiki Denson, and handed Denson a note. The note stated: "This is a bomb. Please comply or it will go off. If you do anything wrong, the whole building will come down. You have twenty-four minutes." The robber, who was holding an object that appeared to be a remote control, told Denson to fill the white bag with money or he would detonate the bomb. Denson immediately began placing money in the bag, which contained an orange Nike shoe box wrapped in gray duct tape.

Believing that the box contained a bomb, Denson put approximately $6,000 in the bag. The robber informed her that she had a certain amount of time to get everyone out of the bank before the bomb went off, then fled, leaving the box on the counter. Denson reported the robbery, and the bank was evacuated. The police eventually determined that the box did not contain a bomb. Footage from the bank's security cameras showed that the robber was wearing a two-toned windsuit, a knit cap, and sunglasses.

Earlier that same day, a man wearing similar clothing and holding an orange Nike shoe box entered Security Bank, which is located seven or eight miles from the SunTrust. The man walked past a uniformed police officer, looked around, asked a teller an "unusual" question, and left. Concerned that the man was "casing" the bank, a Security employee "logged" the frame number where the security camera showed the man. When the Security employee later heard about the SunTrust robbery, she informed police about the incident at her bank and showed authorities the video footage from the bank's security camera. Based on the video evidence from the two banks, authorities concluded that the same individual who robbed the SunTrust had earlier entered Security Bank with a Nike shoe box.

Two weeks later, at approximately 2:00 p.m. on January 30, 2002, the Colonial Bank in Macon was robbed. A man wearing a Tommy Hilfiger cap entered the bank, informed teller Christine Dumas that he had a bomb in a box he was carrying, and instructed her to give him money. He also handed Dumas a note that stated: " 'This is a bomb. Don't be stupid or we all die. No one leave in [sic] twenty minutes.' " Dumas took the bomb threat seriously and gave

---

[2] Id.

the robber money from her cash drawer. The robber placed the cash in a bag, then fled after leaving the box on the counter.

As the bank employees and customers evacuated to a restaurant next to the bank, Dumas and others spotted the robber in the passenger seat of a car exiting the restaurant parking lot. Someone from the bank recorded the car's tag number. Bank personnel reported the robbery and described the get-away car to Detective Willie Gordon, who happened to be eating lunch at the restaurant when the robbery occurred.

Gordon testified that he saw the car described by the bank employees parked in the restaurant parking lot while he was eating. He recalled that a man got out of the car's passenger seat, walked toward the back of the restaurant, then returned ten to fifteen minutes later. Just after the car left the restaurant parking lot, the bank employees reported the robbery to him.

Authorities discovered that the box left by the robber contained an automobile part and an Advance alarm clock, rather than a bomb. The clock had one Panasonic double-A battery inside it, but no battery cover. A short time later, police located the get-away car in back of a nearby house. Inside a trash can behind the house, police found a Family Dollar bag filled with an empty box for an Advance alarm clock, a plastic battery cover that fit the clock in the "bomb" box, and the wrapper for a four-pack of Panasonic double-A batteries that still held three batteries. Police also discovered a red Tommy Hilfiger cap in the trash can. Fingerprints lifted from the car, the Family Dollar bag, and the alarm clock box matched Jones' fingerprints.

Inside the car, officers also found fingerprints belonging to Bernard Dean, the vehicle's owner. Dean admitted that he drove Jones to Colonial Bank on January 30, 2002. According to Dean, Jones asked him for a ride to the Family Dollar store, and Dean agreed. When Jones got into the car, he had with him a plastic bag containing the "bomb" box used in the Colonial Bank robbery. Jones also was wearing a red Tommy Hilfiger cap. Dean took Jones to the Family Dollar, where Jones purchased a clock and batteries. At Jones' request, Dean then drove him to Colonial Bank. While Dean waited in the restaurant parking lot, Jones entered the bank with the box and the items he had purchased at the Family Dollar. Jones returned sometime later, told Dean to "pull off," and scooted down in the passenger seat. Dean testified that he did not know exactly what had happened in the bank, but he suspected that something was amiss.

Dean drove to a nearby house, parked in the backyard, and the two men went their separate ways. Before Dean left, however, he saw Jones with a bag of money, and he concluded that Jones had robbed the bank. Dean also observed Jones place something in a trash can near the parked car.

Dumas positively identified Jones at trial as the Colonial Bank robber. In addition, Dean and his girlfriend, who also knew Jones, reviewed security-camera footage from the Colonial Bank robbery. Both identified Jones as the robber in the photographs. They also recognized Jones as the suspicious individual carrying a Nike shoe box pictured in the January 15, 2002 photographs from Security Bank. The evidence further showed that, when arrested by police, Jones had on shoes that resembled the shoes worn by the SunTrust robber and the individual who entered Security Bank.

Based on this and other evidence, the jury found that Jones committed the Colonial Bank and SunTrust Bank armed robberies. On appeal, Jones argues that the evidence was insufficient to support his convictions. We disagree.

"A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon."[3] The State presented overwhelming evidence that Jones robbed Colonial Bank using a replica of a bomb. That evidence, including identifications by the victim, Dean, and Dean's girlfriend, fingerprints linking Jones to the get-away car and the materials used to assemble the fake bomb, and Dean's testimony, authorized the jury to find him guilty of armed robbery with respect to that bank.[4] Furthermore, although the evidence regarding the SunTrust Bank robbery was not as strong, a reasonable jury could have found, based on Jones' identification as the individual who entered Security Bank, the similarities between that individual and the SunTrust robber, and the shoes worn by Jones at the time of his arrest, that Jones also robbed the SunTrust Bank using a replica bomb.[5]

2. Jones argues that he received ineffective assistance of counsel at trial. Specifically, he claims that counsel failed to properly notify the prosecution of his alibi defense, resulting in the exclusion of alibi testimony at trial. To succeed in this claim, Jones "must show that counsel's performance was deficient and that the deficient performance prejudiced him such that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different."[6] A trial court's determination that a defendant received effective assistance of counsel will be upheld unless it is clearly

---

[3] OCGA § 16-8-41 (a).

[4] See id.; *Mitchell v. State*, 250 Ga. App. 292, 297 (4) (551 SE2d 404) (2001); *McCluskey v. State*, 211 Ga. App. 205, 207-208 (2) (438 SE2d 679) (1993).

[5] See OCGA § 16-8-41 (a); *Mitchell*, supra; *McCluskey*, supra.

[6] *Morris v. State*, 257 Ga. App. 169, 172 (2) (570 SE2d 619) (2002).

erroneous.[7]

The record shows that, four days before trial began on January 6, 2003, defense counsel served the State with a list of witnesses who would present an alibi defense. The State objected to these witnesses, asserting that the alibi notice was neither timely nor sufficient under OCGA § 17-16-5 (a).

At a hearing prior to trial, defense counsel explained that in November 2002, Jones provided him with information regarding potential alibi witnesses for January 30, 2002, the date of the Colonial Bank robbery. Counsel, however, did not begin investigating the alibi defense until January 1, 2003, and he provided the State with no information regarding Jones' alibi until the following day. According to counsel, if allowed to testify, two of the alibi witnesses would have stated that they either saw or were with Jones at his home around 2:00 p.m. on a particular afternoon in January 2002, although they could not pinpoint the exact date. The third alibi witness, Jones' live-in girlfriend, would have established that these witnesses saw or visited with Jones on January 30.

The trial court excluded the alibi testimony after determining that Jones failed, in bad faith, to comply with the notice requirements of OCGA § 17-16-5 (a) and that this noncompliance prejudiced the State.[8] On motion for new trial, Jones argued that trial counsel was ineffective in not meeting the notice requirements for presenting an alibi defense. The trial court denied the motion, concluding that even if counsel performed deficiently, the deficiency did not prejudice Jones, given the overwhelming evidence of guilt. We find no error.

We note that Jones' alibi evidence went only to the charge involving Colonial Bank. He had no alibi for the SunTrust Bank robbery. And the proof linking Jones to the Colonial Bank robbery, including identification testimony, Dean's statements regarding Jones' conduct, and fingerprint evidence, was overwhelming. Furthermore, the only witness who could connect the alibi evidence to the date of the robbery was Jones' live-in girlfriend, who testified at trial that she still loved Jones, was "standing by him," and did not "want to see anything bad happen to him," thus raising credibility issues.[9] Under these circumstances, Jones cannot show a reasonable probability that the outcome of the trial would have been different had counsel

---

[7] *Petty v. State*, 260 Ga. App. 38, 40 (2) (579 SE2d 23) (2003).

[8] See OCGA § 17-16-6 ("If . . . it is brought to the attention of the court that the defendant has failed to comply with the [discovery] requirements, the court may . . . upon a showing of prejudice and bad faith, prohibit the defendant from introducing the evidence not disclosed or presenting the witness not disclosed.").

[9] Although the trial court excluded the girlfriend's alibi testimony, Jones called her as a witness to testify about other matters.

met the notice requirements of OCGA § 17-16-5 (a) and presented the alibi defense.[10]

3. Jones also argues that the record contains no evidence that his failure to comply with OCGA § 17-16-5 (a) resulted from bad faith. Thus, he contends, the trial court erred in excluding the alibi testimony. Pretermitting whether the trial court erred, however, this claim of error presents no basis for reversal. Given the nature of the proposed alibi testimony, as well as the overwhelming evidence that Jones robbed the Colonial Bank, it is highly probable that the alleged error did not contribute to the jury's verdict and, therefore, was harmless.[11]

4. Jones further argues that the trial court erred in failing to give his requested jury instruction on alibi. As noted above, however, the trial court excluded Jones' alibi evidence.

"It is well settled that where the evidence in support of the defense of alibi does not show the impossibility of the defendant's presence at the scene of the crime at the time of its commission, the failure of the court to charge the law of alibi is not error."[12] In this case, the jury heard *no* evidence supporting an alibi defense, much less evidence of such impossibility. It follows that the trial court properly refused to give this requested charge.[13]

5. Finally, Jones asserts that the trial court erred in permitting the prosecutor to introduce evidence regarding his incarceration prior to trial. Following his arrest, Jones apparently was not released on bond and remained in jail while awaiting trial. On cross-examination, the prosecutor asked Jones' girlfriend whether Jones had been in jail for "the past eleven months, plus a little bit" and also queried whether she continued to stand by Jones. In Jones' view, such questions improperly placed his character in issue. The record shows, however, that Jones did not object to these questions at trial. Accordingly, he has waived this claim of error.[14]

*Judgment affirmed. Eldridge and Adams, JJ., concur.*

---

[10] See *Morris*, supra at 173; *Brown v. State*, 192 Ga. App. 867, 868 (2) (386 SE2d 673) (1989). Cf. *Richardson v. State*, 189 Ga. App. 113, 114 (375 SE2d 59) (1988) (trial counsel's deficiency in failing to call alibi witnesses prejudiced the defense in case where evidence against defendant, which rested largely upon the identification testimony of one witness, was not overwhelming).

[11] See *Blair v. State*, 273 Ga. 668, 670 (4) (543 SE2d 685) (2001); *Blige v. State*, 264 Ga. 166, 168 (3) (441 SE2d 752) (1994); *Tanksley v. State*, 248 Ga. App. 102, 105 (2) (545 SE2d 652) (2001).

[12] (Punctuation omitted.) *Hulett v. State*, 262 Ga. 194, 195 (2) (415 SE2d 642) (1992).

[13] See id.; *Hendrick v. State*, 257 Ga. 514 (1) (361 SE2d 169) (1987).

[14] See *Rupert v. State*, 239 Ga. App. 128, 131 (1) (520 SE2d 695) (1999) (" 'It is well-settled in this state that it is too late to urge objections to the admission of evidence after it has been admitted without objection.' ").

DECIDED MARCH 30, 2004.

*Jonathan P. Waters*, for appellant.
*Howard Z. Simms, District Attorney, Graham A. Thorpe, Assistant District Attorney*, for appellee.