## A11A2118. SALAZAR v. THE STATE.
### (722 SE2d 902)

BARNES, Presiding Judge.

Cristina Salazar was convicted of aggravated stalking and sentenced to eight years on probation. She appeals, contending that the trial court erred in restricting her cross-examination of the victim, her husband, regarding his immigration status, which she argues would have shown his bias against her. For the reasons that follow, we affirm.

We view the evidence on appeal in the light most favorable to the verdict, and we no longer presume the defendant is innocent. *Brown v. State*, 293 Ga. App. 633 (667 SE2d 899) (2008). We do not weigh the evidence or decide the witnesses' credibility, but only determine if the evidence is sufficient to sustain the convictions. Id. We construe the evidence and all reasonable inferences from the evidence most strongly in favor of the jury's verdict. Id.

Viewed in that light, the evidence at trial established that Salazar left her husband and two children in December 2008 because she "found a new person in her life," but wanted to return to the house a few months later. Her husband testified that he did not feel comfortable because Salazar "brought these guys to [the] house" even though he asked her not to do so. When he asked her to leave, she refused, responding that she was still his wife and that there was "legally nothing [he could] do about it." She became upset when the husband said he was going to move to a new place, and at 3:00 one morning he awoke to find her "strolling" around his bed with a knife in her hand, threatening to kill him because he was going to move. When he grabbed her hands to make her drop the knife she tried to bite him, then threatened to kill herself if he called the police. He did not want to get her into trouble so he did not call, and Salazar decided to leave the house.

Two weeks later, Salazar came to the house and retrieved the couple's two children, who were nine and thirteen at the time of the incident. She asked her husband to bring her money so she could buy the children food, but when he offered to send money instead, she reported to the Department of Family and Children Services that the children had not eaten for days and that he had abused her physically. An investigation uncovered no evidence to support Salazar's allegations. Her husband then obtained a 30-day ex parte family violence

protective order against Salazar, followed by a 12-month family violence temporary protective order ("TPO") granted in August 2009.

After the TPO was in place, Salazar repeatedly called her husband from different telephone numbers, sometimes upset or "really mad." He asked her to stop because her actions were "going to get [her] into trouble" and would involve their children, but she continued to call and threatened to obtain a gun and kill her husband and herself. In September 2009, Salazar approached him and a friend in a theater parking lot and began yelling at him, then got into her car and struck the passenger side of her husband's car three times. She pulled in front of his car to block it, but then drove to another part of the parking lot after he called the police. The police arrived and arrested Salazar, who had a copy of the TPO with her, but even after she got out of jail she continued calling her husband repeatedly from different telephone numbers. She came into his house and took some of his clothes, which she returned the next day after he called the police again.

1. Although Salazar did not challenge the sufficiency of the evidence against her, the evidence as outlined above was sufficient for a rational trier of fact to find her guilty beyond a reasonable doubt of aggravated stalking. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Salazar contends that the trial court committed harmful error in denying her request to cross-examine the victim regarding his immigration status. In November 2009, a month after the incident in the parking lot, the victim received notice that his application for lawful resident status in the United States had been denied because he had prior convictions for simple battery domestic violence against Salazar. At the time of the trial, the victim was trying to change his immigration status under the federal "Violence Against Women Act" ("VAWA") by asserting that he was a victim of domestic violence by Salazar. The trial court sustained the State's objections to some of Salazar's questions on cross-examination of the victim related to the reason his application was denied and whether a conviction against Salazar would bolster the victim's attempt to adjust his immigration status, noting that the victim's application was denied after the incident in the parking lot. Salazar argues on appeal that she should have been allowed to ask the victim about the reason his application was denied to show he was biased against Salazar.

"Within carefully protected legal parameters, the scope of cross-examination lies within the sound discretion of the trial court; this discretion will not be disturbed by an appellate court absent manifest abuse." *State v. Battaglia*, 221 Ga. App. 283, 284-285 (1) (470 SE2d 755) (1996). The trial court in this case allowed Salazar to cross-examine the victim and elicit the following information: that around

the time of the parking lot incident he received information from federal immigration officials that they were denying his application to adjust his immigration status; that since then, he had reapplied in order to "fix" his immigration status; that he reapplied under the VAWA about a month before trial; and that under that act, he had to show that he is or has been the victim of domestic violence. Accordingly, Salazar had sufficient evidence to argue to the jury that the victim was lying to improve his immigration status.

Salazar also argues that she should have been able to ask the victim about the fact that his application to alter his immigration status had been denied because of his conviction ten years before of simple battery against Salazar. But prior convictions are certainly prejudicial, and the court had to balance that prejudice against the possible value of admitting the evidence to show that the victim was biased and fabricating the current charges, over ten years later, in order to affect his then-pending immigration matter. We cannot say the trial court abused its discretion in doing so.

Further,

> the immigration status of the victim[ ] was not an issue relevant to the matter being tried; i.e., whether [Salazar] committed the crimes charged. *Sandoval v. State*, 264 Ga. 199 (2) (a) (442 SE2d 746) (1994); *Lemons v. State*, 270 Ga. App. 743, 749-750 (4) (608 SE2d 15) (2004). The trial court did not abuse its discretion in limiting the scope of [Salazar]'s cross-examination of the testifying victim[ ].

(Footnote omitted.) *Junior v. State*, 282 Ga. 689, 691 (2) (653 SE2d 481) (2007). See *Smith v. State*, 277 Ga. 213, 217 (7) (586 SE2d 639) (2003).

*Judgment affirmed. Adams and Blackwell, JJ., concur.*

DECIDED FEBRUARY 9, 2012.

*Adam S. Levin*, for appellant.
*Lee Darragh, District Attorney, Shiv Sachdeva, Assistant District Attorney*, for appellee.