**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**October 19, 2012**

# In the Court of Appeals of Georgia

A12A1533. FOSTER v. THE STATE.

RAY, Judge.

After a jury trial, Omari Foster was convicted of one count of armed robbery. At the hearing on Foster's motion for a new trial, the trial court found that although Foster's counsel's performance was deficient, Foster was not prejudiced by that performance. Foster appeals, contending that his counsel was ineffective in failing to investigate and call a witness, and that the trial court erred in finding that this witness' testimony was based upon "rumored hearsay" and "impeachment evidence" and thus presented no reasonable probability of a different outcome at trial. For the reasons that follow, we affirm.

To prevail on an ineffective assistance of counsel claim, a criminal defendant must show both that his counsel's performance was deficient and that the deficient

performance so prejudiced him that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different.[1] The trial court already has determined that Foster's counsel's performance was deficient. For Foster to show prejudice, however, "[t]he likelihood of a different result must be *substantial, not just conceivable*."[2] "[W]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts."[3]

Viewed appropriately,[4] the evidence shows that on the night of December 26, 2006, Harold Humphries met Ashley Alley at a bar and agreed to follow her home. When they reached Alley's house, they got out of their cars and talked. Two male friends of Alley's approached, and she returned to her car. One man held a gun to Humphries' head and demanded money. When Humphries said he had none, the men

---

[1] *Strickland v. Washington*, 466 U. S. 668, 694 (III) (B) (104 SC 2052, 80 LE2d 674) (1984).

[2] (Citation omitted; emphasis supplied.) *Hill v. State*, 291 Ga. 160, 164 (4) (728 SE2d 225) (2012).

[3] (Citation and punctuation omitted.) *Boynton v. State*, __ Ga. App. __ (2) (730 SE2d 738) (2012).

[4] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

hit him in the face and he tripped over some tree roots and fell. The men went through his pockets, taking his wallet and cell phone. The men walked down the street and around the corner, but returned and again pulled a gun on Humphries, again demanding money. He again said he had none. The men beat him up, he fell to the ground, and the men went through his pockets. He eventually reached into his own pocket and gave them a $100 bill. The two men then got in Alley's car, and she drove away. At trial, Alley testified that Foster, who had a gun, and her boyfriend, James "Tico" Brown, both hit Humphries and took his wallet and keys. They left, then returned and beat him up again. Brown testified that he and Foster both hit Humphries, that Foster pulled a gun on Humphries, and that he and Foster left the scene, then returned to take Foster's money.

When police arrived, Humphries described Alley, Brown, and Foster; he also described Alley's car and gave officers the tag number. After she was arrested, Alley told a detective with the Valdosta Police Department that Brown and Foster had robbed Humphries. Although Brown initially denied the robbery, he eventually told police that he and Foster robbed Humphries. At a photo lineup, Humphries identified Foster as the man with the gun who robbed him.

3

At the motion for new trial hearing, Foster's mother testified that she learned from a man named John Troy that Alley had said Foster was not involved in the robbery. Foster's mother testified that Troy had heard this, variously, from Alley herself, from a relative of Brown's, and "on the street." Foster's mother also testified that Troy told her Alley said Brown's cousin, not Foster, was the second assailant. Foster's mother also told police that Troy had heard her son was not involved. Troy testified at the motion for new trial hearing that Alley told him "directly" that Foster was not involved in the robbery. Troy also testified that he told this to Foster's mother, but not to police.

At the motion for new trial hearing, trial counsel was asked if he reviewed a police report indicating Troy told police he "had heard" Alley was saying Foster was not involved. Foster's trial counsel said yes, but explained that based on the information he had, he did not know that Troy may have had direct knowledge of Alley's alleged statements. Trial counsel never sought to speak to Troy and never cross-examined Alley about her alleged statement to Troy. Trial counsel also testified that his sole theory of defense was that someone other than Foster committed the robbery and that he argued that Brown's cousin was the second assailant.

4

In denying Foster's motion for a new trial, the trial court reasoned that Troy's testimony was based upon "rumored hearsay" and "impeachment evidence" and thus presented no reasonable probability of a different outcome at trial. Foster contends that the trial court erred in denying his motion for a new trial, arguing that the evidence at issue was neither hearsay nor limited in value only to impeachment purposes.

Pretermitting whether the trial court's characterization of the evidence is erroneous, even assuming Troy's testimony was admissible, it would not have created a substantial, rather than merely conceivable, probability that the outcome of Foster's trial would have been different given the overwhelming evidence of Foster's guilt, particularly in light of the testimony of both his accomplices and the victim.

In *Ziegler v. State*,[5] we determined that counsel was not ineffective for failing to call an alibi witness who could have testified that the defendant was living in Florida at the time the crime was committed, where the testimony of two accomplices placed the defendant in Georgia on the dates in question. This Court found it "unlikely that the outcome of the trial would have been different" had the alibi

---

[5] 270 Ga. App. 787, 790 (4) (608 SE2d 230) (2004).

5

witness testified.[6] In *Jones v. State*,[7] we determined that trial counsel was not ineffective for failing to comply with notice requirements necessary to introduce alibi testimony, because other proof linking Jones to a bank robbery, including identification testimony, was overwhelming.[8] Further, as the only witness who could connect the alibi evidence to the date of the robbery had credibility issues, we determined that Jones could not show a reasonable probability that the outcome of trial would have been different had the alibi witness testified.[9]

---

[6] Id.

[7] 266 Ga. App. 679 (598 SE2d 65) (2004).

[8] Id. at 682-683 (2).

[9] Id. We find the cases Foster cites to support his argument distinguishable because the missing testimony alleged in them could have been determinative. See *Fedak v. State*, 304 Ga. App. 580, 585-586 (1) (696 SE2d 421) (2010) (where defendant's only defense was proof his medical condition, which would have shown he lacked the requisite intent to commit the crime, trial counsel was ineffective for failing to call medical expert to testify); *Tenorio v. State*, 261 Ga. App. 609, 610-612 (3) (583 SE2d 269) (2003) (where State's case was weak and centered around the identification testimony of one witness who saw the defendant only once for 15 seconds, trial counsel was ineffective for failing to call alibi witnesses who could have testified that defendant was at work–approximately three-and-one-half hours distant from the crime scene–only an hour after the robbery occurred).

6

In the case at bar, even though none of the fruits of the crime were found with him, the evidence against Foster was likewise overwhelming: he admitted that he had no alibi; was arrested at his home around the corner from the crime scene; and he was positively identified by accomplices Alley and Brown, and by Humphries, who saw him twice at close range with the gun. Further, one of the police officers investigating the case testified that when he told Foster that officers were looking for the gun used in the robbery, Foster said that he had held a black revolver belonging to Brown a few days prior to the incident, and that his fingerprints probably would be on it. The officer had not told Foster that a black revolver was used in the crime.

Here, the identification evidence against Foster was overwhelming, and Troy's testimony at the motion for new trial hearing presented credibility issues in that he had earlier told police and Foster's mother that he heard about Alley's statements from others, rather than directly from Alley. Given this, we cannot say that Foster's trial counsel's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[10] Foster has not shown a substantial, rather than merely conceivable, probability that the

---

[10] *Strickland*, supra at 686 (II).

outcome of his trial would have been different.[11] We cannot say that the trial court clearly erred.[12]

*Judgment affirmed. Miller, P. J., and Branch, J., concur.*

---

[11] *Hill*, supra.

[12] We need not reach the issue of whether the trial court erred in the rationale it used to deny the motion for new trial. We will affirm under the right for any reason rule so long as the ultimate judgment is correct. *Arellano-Campos v. State*, 307 Ga. App. 561, 568-569 (2) (a) (705 SE2d 343) (2011).