**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**May 16, 2013**

# In the Court of Appeals of Georgia

A13A0388. CRUMITY v. THE STATE.

RAY, Judge.

A jury found Roosevelt Crumity guilty of aggravated assault with a deadly weapon (OCGA § 16-5-21 (a) (1), (2)), aggravated stalking (OCGA § 16-5-91), and possession of a firearm during the commission of a felony (OCGA § 16-11-106). Crumity appeals the denial of his amended motion for new trial, contending that the evidence was insufficient to sustain his conviction for aggravated stalking and that he received ineffective assistance of counsel. For the reasons that follow, we affirm.

On appeal, Crumity no longer enjoys a presumption of innocence, and we construe the evidence, and all reasonable inferences therefrom, in a light most favorable to the jury's verdict. *Salazar v. State*, 314 Ga. App. 83, 83 (722 SE2d 902) (2012).

So viewed, the evidence shows that Crumity was married to the victim. The relationship was tumultuous and violent, and involved numerous calls for police assistance. The victim obtained a temporary restraining order ("TRO") against Crumity in 2007 requiring him to stay at least 200 yards away from her. After the entry of the TRO, Crumity told the victim that he would be back and that she was not getting rid of him. In contravention of the TRO's terms, Crumity on various occasions drove past the victim's house, followed her to work in his car, watched her go into her workplace from a parking lot that was only 30 to 50 feet from her workplace, and even went to the store where she worked. On these occasions, the victim was frightened and called police. On December 23, 2007, Crumity called the victim on the phone and told her he was going to kill her. The next morning, as the victim was leaving her house with her son to go to work, she saw Crumity approaching. He was pointing a shotgun at her. The son, who was armed, shot Crumity and then ran to the house to get another gun. He also called 911. Crumity, who was mumbling something about if he could not stay at the house, no one could, then shot the victim twice.

1. Crumity contends that the evidence was insufficient to sustain his conviction for aggravated stalking.

OCGA § 16-5-91 (a) provides that:

2

A person commits the offense of aggravated stalking when such person, in violation of a . . . temporary restraining order, . . . follows, places, under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person.

OCGA § 16-5-90 (a) (1) defines harassing and intimidating behavior by a four-factor test: (1) a knowing and willful course of conduct directed at the victim (2) which causes emotional distress by placing her in reasonable fear for her safety or the safety of someone in her immediate family (3) by establishing a pattern of harassing and intimidating behavior (4) which serves no legitimate purpose.

Crumity acknowledges that the State proved his violation of the protective order, that he engaged in prohibited contact, and that he did so without the victim's consent. He argues, however, that the State failed to prove that he acted for the purpose of harassing and intimidating the victim. Specifically, he contends that OCGA § 16-5-90 (a) (1)'s knowing and willful course of conduct and pattern of behavior requirements necessarily involve a "series of successive actions." *Daker v. Williams*, 279 Ga. 782, 785 (621 SE2d 449) (2005). Crumity points to his own testimony as evidence that his proximity to the victim near her home and workplace did not involve the purpose of harassment of intimidation because he was visiting

friends near her home, meeting a contractor near her workplace, or purchasing items from the store where she worked. This argument is without merit.

> By its plain terms, OCGA § 16-5-91 prohibits even a single violation of a protective order, if that violation is . . . part of a pattern of harassing and intimidating behavior. . . . In determining whether a defendant has exhibited such a pattern of behavior, the jury can consider a number of factors, including the prior history between the parties, the defendant's surreptitious conduct, as well as his overtly confrontational acts, and any attempts by the defendant to contact, communicate with, or control the victim indirectly, as through third parties.

(Footnotes omitted.) *Louisyr v. State*, 307 Ga. App. 724, 729 (1) (706 SE2d 114) (2011).

From the facts outlined above, including both the parties' prior history and the more recent contacts, threats, and telephone calls Crumity made to the victim, a rational jury was authorized to find a pattern of harassing and intimidating behavior sufficient to sustain the conviction. Id.

Crumity's argument that his repeated proximity to the victim in violation of the protective order was not initiated for the purpose of harassing or intimidating her is also unavailing. It is well settled that on appeal, "[w]e do not weigh the evidence or decide the witnesses' credibility, but only determine if the evidence is sufficient to

4

sustain the convictions. We construe the evidence and all reasonable inferences from the evidence most strongly in favor of the jury's verdict." (Citations omitted.) *Salazar*, supra. "Moreover, given that [Crumity] testified at trial as to the reasons underlying his conduct, it was solely for the jury, viewing the testimony in light of the other evidence, to assess [Crumity's] credibility and determine whether his testimony was truthful." (Citation omitted.) *Louisyr*, supra at 730 (1). Here, the jury was entitled to disbelieve Crumity's version of the facts, and to "take his untruthfulness as substantive and affirmative evidence of his guilt." (Citation and punctuation omitted). Id. The evidence was sufficient to sustain the conviction.

2. We turn next to Crumity's contention that he received ineffective assistance of counsel. Crumity argues that trial counsel was ineffective because he "invaded the province of the jury" by asking Crumity on direct examination, "Do you expect the jury to believe that?"[1]

---

[1] Crumity also argues that "a factual inquiry should be conducted" to determine whether the he had a defense that was not presented, whether counsel consulted sufficiently with him, whether counsel adequately investigated the facts and law, and whether counsel was adequately prepared. He presents no factual argument or citations to the record in support of these contentions. An appellate court will not search the record for instances of error, as it is the burden of the party asserting error to show it affirmatively by the record. *Jones v. State*, 318 Ga. App. 342, 348 (3) (a) (iii), n. 4 (733 SE2d 400) (2012).

5

We note that Crumity was acquitted of one of the charges of aggravated assault against him. We have held that acquittal is a relevant factor strongly supporting the conclusion that counsel's assistance fell within the broad range of reasonably effective assistance that bar members in good standing are presumed to render. *Goss v. State*, 305 Ga. App. 497, 499 (2) (699 SE2d 819) (2010).

> To prevail on an ineffective assistance of counsel claim, a criminal defendant must show both that his counsel's performance was deficient and that the deficient performance so prejudiced him that there is a reasonable likelihood that, but for counsel's errors, the outcome of trial would have been different. . . . [T]he likelihood of a different result must be substantial, not just conceivable. We accept the trial court's factual findings and credibility determinations unless clearly erroneous, and independently apply the legal principles to the facts.

(Punctuation, footnotes and emphasis omitted.) *Foster v. State*, 318 Ga. App. 124, 125 (733 SE2d 423) (2012). "Trial tactics and strategy, no matter how mistaken in hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them." (Punctuation and footnote omitted.) *Gray v. State*, 291 Ga. App. 573, 579 (2) (662 SE2d 339) (2008). Further, absent testimony to the contrary, counsel's

actions are presumed strategic, and reasonableness is a question of law rather than a question of fact. *Jacobs v. State*, 299 Ga. App. 368, 372 (2) (683 SE2d 64) (2009).

At the motion for new trial hearing, Crumity's defense counsel showed that his decisions were attributable to reasonable trial strategy. Counsel testified that he discussed with his client, prior to trial, the very type of question Crumity challenges on appeal. Counsel indicated that he made a strategic decision to ask Crumity whether he expected the jury to believe his testimony as a means of minimizing adverse effects on his client by pre-empting a question he expected the prosecution to ask. Counsel testified,

> [M]y experience when trying a case is that when the prosecutor conducts a cross-examination of a defendant, the prosecutor will routinely ask that very question, Do you expect the jury to believe this . . .. One of the things that I will attempt to do is to anticipate the type of questions that a prosecutor will ask when cross-examining my client. And then [I] ask those very questions in a context where I can control the discussion in order to underscore the defense favorable features.

In analogous situations, we have found no ineffective assistance where as a matter of trial strategy defense counsel elicited negative information from a defendant or defense witness as a means of beating the State to the punch. See, e.g., *Wilson v. State*, 291 Ga. App. 69, 74-75 (4) (b) (661 SE2d 221) (2008) (no ineffective

assistance where counsel did not except to trial court's allowing defendant's prior convictions to be used for impeachment, and in fact elicited evidence of client's prior convictions); *Battles v. State*, 290 Ga. 226, 228-230 (2) (719 SE2d 423) (2011) (no ineffective assistance where counsel asked defense witness about a prior conviction and why she had been suspended from the practice of medicine).

In light of the foregoing, Crumity has failed to show that counsel's performance was deficient, and further he "does not make any effort beyond cursory speculation to show how [he] met the prejudice prong of the [ineffective assistance] test." (Citation omitted.) *Waits v. State*, 282 Ga. 1, 6 (4) (644 SE2d 127) (2007). Consequently, we conclude that the trial court did not err in finding that Crumity failed to carry his burden of proving that he received ineffective assistance of counsel.

*Judgment affirmed. Barnes, P. J., and Miller, J., concur.*