## 46989. MESCHINO v. THE STATE.
(385 SE2d 281)

WELTNER, Justice.

Dominic Anthony Meschino shot and killed Gene Atchley with a handgun. He was indicted for murder, tried and found guilty, and sentenced to life imprisonment.[1]

---

[1] The homicide occurred on October 19, 1986. Meschino was indicted for murder on October 13, 1987. The jury's verdict of guilty was returned on November 11, 1987, and he was sentenced on the same date. His motion for new trial was filed on November 19, 1987, and was denied on December 20, 1988. Notice of appeal was filed on December 29, 1988, and was

Meschino and his wife, Kim, lived upstairs in a house owned by the victim. The victim was married to Kim Meschino's mother, and Atchley and his wife occupied the downstairs of the house. In the early morning hours, Meschino and his wife returned home and found it necessary to wake Atchley to gain entrance to the house. Before going into the house, Kim Meschino handed her husband a pistol that had been in her purse. Her testimony, as the state's witness, may be summarized as follows: she and her husband went into the kitchen and ate a sandwich. She wanted to go into the living room to ask Atchley for a cigarette, but before doing so, asked her husband to go with her; when he asked why he should go, she told him Atchley was acting the way he did before he went to the hospital. The two of them went into the living room to ask Atchley for a cigarette, and Atchley began an unprovoked attack on Meschino by lunging at him and pushing him into a closed door. Meschino had his hands in his pockets, and when he withdrew them the handgun came out of his pocket; Atchley then attempted to strike Meschino's head with a hammer; Atchley then grabbed the barrel of the pistol and attempted to shove it into Meschino's chest. Meschino pushed the pistol away from his chest; it discharged and Meschino was wounded in his left arm; when Atchley again tried to strike Meschino with the hammer, Meschino ran toward the kitchen, and tripped on a chair, causing him to fall with his back against a door. When Atchley drew back to strike him with the hammer, the gun discharged, killing Atchley.

1. From the evidence in the record a rational trier of fact could have found Meschino guilty of murder beyond a reasonable doubt.[2]

---

docketed in this court on April 28, 1989. The appeal was submitted without oral argument on June 9, 1989.

[2] The other evidence in the case may be summarized as follows:

Approximately a year before the shooting, following an argument with Atchley, Meschino stated to Atchley's brother-in-law that he was going to have to "get rid of" Atchley. On the evening before the shooting, Meschino stated to a friend with whom he was drinking: "I'm going to get somebody tonight."

Five hours after the shooting, Kim Meschino stated to Agent Wakefield of the Georgia Bureau of Investigation that when she and Meschino returned to their home in the early morning hours before the shooting, they first went upstairs to their room, and then returned to the downstairs in order to go to the kitchen. She further stated that before they came downstairs, she asked Meschino not to take the handgun downstairs.

The shirts worn by Atchley and Meschino at the time of the shooting were examined by a firearms examiner, who concluded that the muzzle of the weapon that fired the fatal shot was discharged from a distance of from 12 to 16 inches from Atchley's chest and that the wound to Meschino's arm was a contact wound. The examiner was of the opinion that a contact wound found on Atchley's left hand was consistent with the powder pattern on Atchley's shirt.

The head of the Department of Forensic Sciences, who performed an autopsy on Atchley's body, testified that, in addition to the fatal wound to Atchley's chest, there was a contact wound to Atchley's left hand, in the fleshy portion of the hand between the thumb and the forefinger, indicating that at the time the pistol was fired, Atchley's hand was grasping

*Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. (a) Meschino complains that the trial court, over objection, allowed the prosecution to offer testimony impeaching the testimony of his wife without laying the foundation required by OCGA § 24-9-83. The record reflects that Kim Meschino was questioned on direct examination as to any statement she may have made to an agent of the Georgia Bureau of Investigation.

Q. Now, do you know Agent Wakefield?

A. Yeah, he was at the hospital.

Q. Did Agent Wakefield come up and talk to you at the hospital?

A. Yes.

Q. Do you recall talking with Agent Wakefield about what had happened with regard to the shooting?

A. Yes. But like I said, I was all tore up, I was scared. The doctor had just told me when he took my husband into surgery that he may have to take his arm off. And he said, if infection set up in it, he could die because it would go straight to his heart, and I was all tore up about it. I was all upset about it.

Q. But you do recall making a statement to Agent Wakefield?

---

the barrel of the pistol. He further stated that the projectile that entered Atchley's chest traced a pattern from front to back that descended four inches before coming to rest just short of the skin of Atchley's back. This witness concluded that the fatal injury would be consistent with Atchley being seated and someone standing over him shooting in a downward direction.

Meschino testified, in part, as follows:

Q. How many times in the kitchen area did you ask him to please stop and leave you alone? A. It was a lot of times. I was asking him to stop. I'm begging for him to stop, just let me out, let me get to the door. My wife said let him get out, please leave him alone, and when he broke loose from my wife, he was coming right at me. And he took one step right toward me and had the hammer pulled way back and he was coming down just like that and I said stop and I shot. . . .Q. You say you were aiming to his side or to the side of him? A. I was — when he lunged at me, he had the hammer back and he was coming right at me, and I had it off to the side of him, I was going to fire just to stop him. And when he lunged at and me he was coming down like this and, I mean, I tried to wait till the last minute, because I didn't want to get killed, because he was aiming right for my head and the hammer was coming right towards me. Q. Now, at that time, Tony, did he reach and grab the pistol at that time? A. No. He was —when he come at me, he had the hammer like this. He stepped towards me. And he was coming down like he was coming down with a sledge hammer.

A. I can vaguely remember it because I was all tore up.

Mrs. Meschino then denied making the statements that Agent Wakefield attributed to her.
The state then questioned her concerning Anthony Taylor.

Q. Mrs. Meschino, do you know Anthony Taylor, ma'am?

A. Yes.

Q. And how do you know him?

A. He's my cousin.

Q. And does he associate with you and your husband, y'all socialize together and that sort of thing?

A. No, I haven't seen him in awhile.

Q. Haven't seen him in awhile. Have you seen him since the shooting?

A. No, not that I can — no. I can't recall seeing him.

Q. You don't recall seeing him. Do you recall talking to Anthony Taylor about the shooting, Mrs. Meschino?

A. No, I've never talked to him about it.

Q. Never talked to Anthony Taylor about the shooting?

A. No.

(b) OCGA § 24-9-83 provides in part:

A witness may be impeached by contradictory statements previously made by him as to matters relevant to his testimony and to the case. Before contradictory statements may be proved against him, unless they are written statements made under oath in connection with some judicial proceedings, the time, place, person, and circumstances attending the former statements shall be called to his mind with as much certainty as possible.

The purpose of laying such a foundation is to give the witness the opportunity to explain or deny the prior contradictory statement. [*Smith v. State*, 171 Ga. App. 758, 762 (321

SE2d 213) (1984).]

(c) We think that in these circumstances the requirements of the Code section were met sufficiently to permit the state to impeach its witness by proof of prior contradictory statements. As to Agent Wakefield, the witness acknowledged making some kind of statement to him at the hospital, after the shooting. As to Andrew Taylor, her testimony was unequivocal that she had not spoken with him nor seen him since the shooting, and hence had made *no* statement to him. See *Carter v. State*, 244 Ga. 803, 806 (262 SE2d 109) (1979), as follows:

"[T]he cross-examiner will ask the witness whether he made the alleged statement, giving its substance, and naming the time, the place, and the person to whom made. . . . If the witness denies the making of the statement, or fails to admit it, . . . then the requirement of 'laying the foundation' is satisfied and the cross-examiner, at his next stage of giving evidence, may prove the making of the alleged statement." [Cit.]

As to Wakefield, the state failed to outline the substance of the statement, in that it presented to the witness no summary of its contents. Even so, she acknowledged that Wakefield had talked with her at the hospital after the shooting, and that she "can vaguely remember" making a statement to him. As to Taylor, the substance of the statement was called to the attention of the witness. (Specifically: "Do you recall talking to Anthony Taylor about the shooting, Mrs. Meschino?")

(d) The trial court did not err in permitting the state to cross-examine its witness.

3. Meschino complains that the trial court erred in holding that evidence of the victim's alleged violent behavior and prior psychiatric hospitalization was irrelevant to his defense of justification.

Out of the presence of the jury, Mrs. Meschino testified about prior psychiatric hospitalizations of Atchley. Without detailing specific conduct, she stated:

Q. All right. How was he acting in September or August of 1985, when he was sent to Rome?

A. He was real violent, he was going crazy. He would — when those spells hit him, he would kill you, that's how crazy he would go.

. . .

Q. All right. And you said that back during this period of time, that when he would have these spells he would get violent and he would hurt you, is that correct?

A. He would kill you.

. . .

Q. All right. Now on the evening or the morning of October 19, 1986, how was he acting that seemed to you to be strange before this attack occurred?

A. His eyes were glistening, and it was just the look that he had on him. He was just like Gene's body but Gene wasn't in it.

. . .

Q. In your opinion, on the early morning hours of October 19, 1986, was Gene Atchley acting in a crazy violent manner the way he did back when he was sent to the hospital in 1985?

A. Yes, it was the look in his eyes and the way he was doing, and whenever he went and got that ashtray stand and slammed it down in front of Tony's feet and starting hitting him, that wasn't like him at all. He was going crazy, just like he did before they put him in Rome.

The trial court correctly excluded Mrs. Meschino's testimony as to Atchley's psychiatric hospitalization and purported violent nature because it consisted primarily in conclusions and characterization, unsupported by details of specific acts on the part of Atchley, and without medical evidence to tie any hospitalization to violent conduct.[3]

4. Meschino complains that the handgun used in the shooting should have been suppressed from evidence because it was seized without a warrant and without probable cause. The evidence shows that Mrs. Meschino led a deputy sheriff to the room in her home where the weapon was located and asked that he remove it. "A valid consent eliminates the need for either probable cause or a search warrant." *Dean v. State*, 250 Ga. 77, 80 (295 SE2d 306) (1982).

---

[3] See *Baker v. State*, 142 Ga. 619, 622 (83 SE 531) (1914), discussing the admissibility of evidence of prior acts of violence committed by a victim, as follows: " 'But facts from which apprehension might reasonably be inferred, *as distinct from opinion*, are relevant when stated or shown by third parties. . . .' [Cit.]" (Emphasis supplied.)

5. We have reviewed Meschino's remaining contentions and find no error.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 9, 1989.

*Hill & Henry, William Ralph Hill, Jr.,* for appellant.

*Ralph Van Pelt, Jr.,* District Attorney, *James D. Franklin,* Assistant District Attorney, *Michael J. Bowers,* Attorney General, *Richard C. Litwin,* for appellee.