## A99A0439. ARNOLD v. THE STATE.
(517 SE2d 97)

ELDRIDGE, Judge.

Charles Nathaniel Arnold appeals from a Bartow County jury's verdict finding him guilty of the armed robbery of the Golden Gallon convenience store at the corner of Felton Road and Highway 41 in Cartersville, Georgia. In this appeal, Arnold contends that the trial court erred in denying his motion to suppress evidence obtained as a result of an allegedly illegal search of his temporary residence. We affirm Arnold's conviction.

In a light most favorable to the verdict,[1] a man entered the Golden Gallon at approximately 11:30 p.m. on New Year's eve, December 31, 1996. He got a quart bottle of beer from the cooler and approached the counter. When the female clerk asked for I.D., the man pulled out a gun and demanded money from the cash register. The man then jumped the counter and put the gun into the clerk's back. The clerk was ordered to open the safe because the perpetrator "want[ed the] deposit." A video camera caught the interaction, including the point at which the clerk looked directly at the gunman as he threatened to "blow [her] brains out," while the clerk begged "please don't kill me." Thereafter, the perpetrator left the Golden Gallon with the quart of beer and approximately $6,300. The clerk activated the silent alarm. The Cartersville Police initiated an investigation.

Two days after the incident, an employee of the Guest House apartments, which are located next to the Golden Gallon, discovered on the Guest House property two twenty-dollar bills bound together with identification markings and a notation stating "safe." A quart bottle of beer was nearby. The employee called the Cartersville police. The Golden Gallon clerk identified the money as coming from the Golden Gallon safe and identified the markings as her identification

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

numbers. As a consequence, the police investigator showed the Golden Gallon videotape to employees of the Guest House apartments. On January 7, 1997, the investigator received information from a housekeeper that the perpetrator in the video resembled a visitor to the Guest House, who frequently stayed with the resident of apartment 415.

That same day, the police investigator learned that Daryll Rush rented apartment 415. The investigator enlisted the aid of the Guest House manager and knocked on the door of apartment 415. No one answered, and the manager let the investigator in to look for the suspect. In looking for the suspect, the investigator opened a closed bathroom door and saw suspected marijuana in plain view. She left immediately, obtained a search warrant and back-up, re-entered the apartment, and searched apartment 415 pursuant to the warrant.

During this search for marijuana, a black Daisy Powerline BB pistol, which fit the description of the handgun used in the Golden Gallon armed robbery, was discovered in the top of a closet under some clothing. Leaving the apartment secured, the investigator left and obtained a second search warrant in order to search apartment 415 for additional items possibly involved in the armed robbery. Subsequently seized were the black BB pistol, a pair of black denim pants, a green and blue baseball cap, a pair of Nike tennis shoes, a light yellow jacket, and a jewelry sales receipt for $94.49 made out on January 2, 1997, to appellant Charles Arnold. Pursuant to the investigation, the investigator also learned that Charles Arnold, who is Daryll Rush's cousin, was temporarily residing in apartment 415.

Arnold was arrested on January 10, 1997. After *Miranda*[2] warnings, he gave a statement to the police in which he denied involvement in the incident, although he gave several conflicting stories as to his whereabouts at the time of the armed robbery. A photographic line-up was immediately put together and was shown to the Golden Gallon clerk. She unhesitatingly picked out Arnold as the perpetrator of the December 31 armed robbery.

At the hearing on the motion to suppress, Arnold argued that the investigator's initial entry into apartment 415 to look for a suspect was an illegal search conducted without a warrant and without justifying, exigent circumstances.[3] The State countered that the rental agreement between Daryll Rush and the management of the Guest House apartments specifically created an "Innkeeper/guest" relationship — not a landlord/tenant relationship — and, additionally, such agreement reserved to the Innkeeper a right of entry for "purposes of

---

[2] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[3] Based upon the evidence, the trial court correctly found that Arnold had sufficient standing to challenge the search of the apartment.

cleaning, performing repairs and/or service work, and preventative maintenance." The trial court concluded that, while the question was "close," the specifics of the rental agreement permitted the initial entry into Rush's apartment in which Arnold temporarily resided. Consequently, the trial court denied Arnold's motion. *Held*:

1. Contrary to the State's assertions, an "Innkeeper/guest" relationship does not negate the guest's right to privacy in the accommodations. *Minnesota v. Olson*, 495 U. S. 91, 96, fn. 5 (110 SC 1684, 109 LE2d 85) (1990). Nor are we prepared to find that a lease agreement that contains a "right of entry" for specific, normally scheduled purposes, such as maid service or repairs, is sufficient to demonstrate an affirmative "waiver" by the lessee of any expectation of privacy as to *all* entries into the leased premises.

> [T]he Supreme Court [has] said that a place need not be respondent's "home," temporary or otherwise, in order for him to enjoy a reasonable expectation of privacy there. The Fourth Amendment protects people, not places, and provides sanctuary for citizens wherever they have a legitimate expectation of privacy.

(Citations, punctuation, and emphasis omitted.) *State v. Brown*, 212 Ga. App. 800, 802 (442 SE2d 818) (1994).

Thus, we find incorrect as a matter of law the basis upon which Arnold's motion to suppress was denied. In this case, the initial, improper entry led to the finding of the marijuana, which led to the finding of the BB pistol, which led to the finding of the remaining items seized. Arnold's motion to suppress this "fruit" of the initial, improper entry should have been granted.

2. Having said that, "[t]he question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." (Citation and punctuation omitted.) *LaRue v. State*, 137 Ga. App. 762, 764 (224 SE2d 837) (1976). See also *Johnson v. State*, 238 Ga. 59, 60 (230 SE2d 869) (1976); *Baker v. State*, 202 Ga. App. 892 (416 SE2d 295) (1992). Under the specific facts of this case, we find that none of the evidence seized as a "fruit" of the initial, improper entry could reasonably be construed as contributing to the verdict in this case.

(a) When shown the BB pistol seized during the search of apartment 415, the Golden Gallon clerk testified that she got a good look at the gun, but also testified that "[i]t was so fast. He jumped the counter and he put the gun in my back." The clerk testified that the BB gun looked *similar* to the gun used in the robbery and, only later, testified that "I cannot tell you that's the exact gun. That looks exactly like the gun." Nothing about the weapon itself would serve to

inculpate *Arnold* in the armed robbery. There was no ballistics evidence and no fingerprint evidence. Nor was the weapon found in Arnold's possession, having been located in the top of a closet belonging to Daryll Rush. Further, the Golden Gallon videotape in which the weapon could be seen did not show that the weapon seized was the weapon used in the armed robbery.

(b) The black denim pants seized in the search of apartment 415 were *not* the pants worn by the perpetrator. The Golden Gallon clerk testified that the pants worn by the perpetrator "were loose. They weren't jeans."

(c) The blue and green baseball cap seized in the apartment was *not* the hat worn by the perpetrator. The clerk testified that the armed robber wore a black hat with a black toboggan underneath.

(d) The Nike tennis shoes seized during the search of the apartment were *not* the shoes worn by the armed robber. "They weren't tennis shoes. . . . They were just a pair of black shoes. It wasn't boots."

(e) As for the light yellow jacket seized in the search of the apartment, the clerk testified that she did not know if the perpetrator was wearing a light yellow jacket: "[Q:] Do you know if it was yellow or was it — [A:] No, I can't honestly tell you if it was yellow now."

(f) The jewelry store receipt seized during the search was dated January 2, 1997, two days after the Golden Gallon incident, and did *not* connect Arnold to the armed robbery. To the extent that the receipt demonstrated that Arnold was in possession of $94.49 in order to buy jewelry, the State's evidence also showed that Arnold's wife had given him money for Christmas and that Arnold had held down a paying job for the six months preceding the January 2 purchase and had been paid a few days before the purchase.

Far from inculpating Arnold, the defense attorney made good use of the evidence seized in the search of apartment 415 in order to demonstrate the flaws in the police investigation. The fact that nothing seized in the apartment could be identified as either used in the armed robbery or worn by the perpetrator served only to illustrate defense counsel's point that the investigator's arrest of Arnold was as mistaken as the investigator's seizure of the items.

Accordingly, under the facts of this case, the admission of such evidence, while error, was harmless. *LaRue v. State*, supra.

3. The clerk's positive identification of Arnold as the perpetrator of the armed robbery, along with Arnold's conflicting statements as to his whereabouts on New Year's eve and his resemblance to the perpetrator in the Golden Gallon videotape shown to the jury during trial, provided sufficient evidence for a rational trier of fact to have found Arnold guilty of armed robbery beyond a reasonable doubt. *Jackson v. Virginia*, supra.

*Judgment affirmed. Pope, P. J., and Smith, J., concur.*

DECIDED APRIL 30, 1999.

*Levinson & Paul, Christopher G. Paul,* for appellant.
*T. Joseph Campbell, District Attorney, Kelly F. Herron, Assistant District Attorney,* for appellee.