**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 15, 2014**

# In the Court of Appeals of Georgia

A14A0140. MOSES v. THE STATE.

MCFADDEN, Judge.

A jury found Marco Moses guilty of aggravated assault, aggravated assault with a deadly weapon, and possession of a firearm during the commission of a felony. He appeals his convictions. He argues that the trial court erred in denying his motion to suppress evidence found during a search of a house that he and his mother owned and at which his mother lived. We agree with Moses that the trial court erred in holding that he lacked standing to make this challenge but find that the trial court did not err in denying his motion on the merits, and we find that Moses has waived appellate review of alternative grounds for suppression that he raised post-conviction. Moses argues that the trial court erred in allowing certain impeachment evidence, but we find that the state laid the necessary foundation for the evidence. Moses argues

that the trial court erred in allowing various other evidence, argument, and lines of questioning at trial, but we find that he waived appellate review of these claims by failing to object at trial. Finally, Moses argues that his trial counsel was ineffective, but we find he has not met his burden of showing he received ineffective assistance of counsel. Accordingly, we affirm.

1. *Facts.*

Viewed in the light most favorable to the verdict, the evidence showed that shortly after midnight on September 26, 2007, Dantavious Walker drove his friend's car to a convenience store. As Walker returned to the car after making a purchase, a van (whose driver Walker later identified as Moses) pulled up and a man (whom Walker also later identified) emerged and began shooting at Walker and the car. Walker was shot several times as he fled the scene in the car. Walker identified Moses as the van's driver in an interview with police at the hospital several hours later.

On October 1, 2007, police obtained a warrant to arrest Moses and a warrant to search for him at a house where his mother lived. They found Moses there and arrested him. Later that day, police obtained another warrant to search that house for items including guns. In a bathroom adjoining the master bedroom, police found a gun that a ballistics expert subsequently tied to shell casings found at the scene of the

shooting. In the master bedroom, police found Moses's belongings, including his clothing, jewelry, identification, and paperwork bearing his name.

2. *Motion to suppress.*

Moses moved to suppress the evidence found during the search of the house at which he had been arrested on the ground that the search warrant affidavit contained insufficient facts to support the issuance of the warrant. The trial court denied the motion, finding both that Moses lacked standing to challenge the search of the house and, alternatively, that the motion failed on its merits. The trial court reiterated these two holdings in an order denying Moses's motion for new trial.

"On reviewing a trial court's ruling on a motion to suppress, evidence is construed most favorably to uphold the findings and judgment and the trial court's findings on disputed facts and credibility must be accepted unless clearly erroneous." *Wright v. State*, 294 Ga. 798, 801 (2) (756 SE2d 513) (2014) (citation and punctuation omitted). "[W]e may consider all relevant evidence of record, wherever located, including evidence introduced at a suppression hearing and that introduced at trial." *Jackson v. State*, 295 Ga. App. 427, 430 (3) (671 SE2d 902) (2009) (citation omitted).

(a) *Standing to challenge search.*

3

Moses argues that the trial court erred in finding that he lacked standing to challenge the search. "In order to claim the protections of the Fourth Amendment against unreasonable search and seizure, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable." *Smith v. State*, 284 Ga. 17, 21 (3) (663 SE2d 142) (2008) (citations and punctuation omitted). In other words, "a defendant must demonstrate both a 'subjective' expectation of privacy and that the expectation is one that society is willing to recognize as reasonable." *Rashid v. State*, 292 Ga. 414, 418 (3) (737 SE2d 692) (2013) (citation omitted). The trial court held that Moses lacked standing to challenge the search of the house because he did not live there and because people "came and went from the room in question."

Viewed most favorably to the trial court's findings and judgment, the evidence is sufficient to sustain the trial court's finding that Moses did not live in the house. Moses concedes in his appellate brief that there was a "clear dispute in the evidence" on this point. Moses's mother testified that he did not live there, and the trial court expressly credited that testimony despite the mother's equivocation on the point and contradictory evidence presented by Moses.

Nevertheless, "a place need not be respondent's 'home,' temporary or otherwise, in order for him to enjoy a reasonable expectation of privacy there. The Fourth Amendment protects people, not places, and provides sanctuary for citizens wherever they have a legitimate expectation of privacy." *Arnold v. State*, 237 Ga. App. 857, 859 (1) (517 SE2d 97) (1999) (citation omitted). See generally *Minnesota v. Olson*, 495 U. S. 91, 95-100 (II) (110 SCt 1684, 109 LE2d 85) (1990) (discussing considerations for determining whether person has legitimate expectation of privacy in place where he does not live).

Notwithstanding the evidence that Moses did not live in the house, there was undisputed evidence that he had a legitimate expectation of privacy there. First and foremost, Moses owned the house, possessing joint tenancy with his mother. Georgia cases acknowledge that a party's ownership interest in property is relevant to the party's standing to contest a search of that property. See, e.g., *Thomas v. State*, 274 Ga. 156, 159 (3) (549 SE2d 359) (2001) (noting that defendant had no expectation of privacy where he had "no ownership or possessory interest in the premises"); *Carreno v. State*, 272 Ga. App. 229, 231 (1) (c) (612 SE2d 62) (2005) (finding defendant had no standing to contest search of apartment in which he had "no ownership or possessory interest"); *Floyd v. State*, 237 Ga. App. 586, 587 (516 SE2d

5

96) (1999) ("A defendant does not have a reasonable expectation of privacy in the premises of another where the defendant is a transient visitor who has no ownership or possessory interest.").

The trial court discounted Moses's ownership of the house on the ground that a property owner can lack a reasonable expectation of privacy in property when it is leased to a tenant. As noted in 6 LaFave, *Search & Seizure* § 11.3 (a) (5th ed. 2012), "the mere fact of ownership standing alone will not necessarily suffice. In particular, if the owner of certain premises has leased them to another without reserving any right of possession to himself, then it cannot be said that a police intrusion into those premises encroaches upon his expectation of privacy." Id. at 170 (citations omitted). But no evidence showed that Moses leased the property to a tenant. The persons residing at the house were his mother (who co-owned the property) and his minor daughter. And undisputed evidence showed that, in addition to his ownership, Moses retained other rights in the house – he received mail there and kept his personal property in the master bedroom, including his clothing, jewelry, identification, and personal papers. At the time of his arrest, Moses was at the house, and his vehicle was parked in the garage. In fact, at trial the state emphasized Moses's connection with the house, although it maintained that he lived elsewhere.

6

This undisputed evidence showed that Moses was neither a transient visitor at the house nor a landlord who had relinquished his rights of possession to a tenant. He owned the house, had access to it, kept personal items there, and spent time there. Moses had an expectation of privacy that was "rooted in understandings that are recognized and permitted by society [and was an expectation] society is prepared to recognize as reasonable." *State v. Brown*, 212 Ga. App. 800, 803 (442 SE2d 818) (1994) (citations and punctuation omitted).

Although the trial court found that people "came and went from the room in question" – presumably the master bedroom and its adjoining bathroom – the record does not demonstrate any people having access to those rooms other than Moses, his mother, the mother of his minor child, and "cleaning people." It is undisputed that both Moses's mother and the child lived in the house, and that the mother co-owned the house with Moses. The state has pointed to no authority that a property owner who otherwise had a reasonable expectation of privacy in the house relinquished that expectation by allowing persons such as household residents, family members of residents, or housecleaners access to the house. See *Arnold*, 237 Ga. App. at 859 (1) (language in tenant's lease agreement giving landlord "right of entry" into apartment for specific, normally scheduled purposes such as maid service or repairs did not

7

demonstrate that tenant had waived any expectation of privacy as to all entries into the premises).

For these reasons, we find that the evidence viewed in the light most favorable to the trial court's findings and judgment nevertheless showed that Moses had standing to challenge the search of the house. Accordingly, the trial court erred in holding that he did not have standing.

(b) *Merits of the motion to suppress.*

Moses moved to suppress the evidence found in the search of the house on the ground that there was not probable cause for the warrant authorizing the search. See OCGA § 17-5-21 (a). Our Supreme Court, in *State v. Palmer*, 285 Ga. 75 (673 SE2d 237) (2009), described the standards applicable to the various levels of judicial scrutiny involved in the warrant process as follows:

> The magistrate's task in determining if probable cause exists to issue a search warrant is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

> The trial court may then examine the issue as a first level of review, guided by the Fourth Amendment's strong preference for

8

searches conducted pursuant to a warrant, and the principle that substantial deference must be accorded a magistrate's decision to issue a search warrant based on a finding of probable cause. A deferential standard of review is appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.

Our appellate courts will review the search warrant to determine the existence of probable cause using the totality of circumstances analysis. . . . The duty of the appellate courts is to determine if the magistrate had a substantial basis for concluding that probable cause existed to issue the search warrant. . . . In reviewing the grant or denial of a motion to suppress, we apply the well-established principles that the trial court's findings as to disputed facts will be upheld unless clearly erroneous and the trial court's application of the law to undisputed facts is subject to de novo review, keeping in mind that a magistrate's decision to issue a search warrant based on a finding of probable cause is entitled to substantial deference by a reviewing court.

Id. at 77-78 (citations and punctuation omitted).

With these standards in mind, we turn to the search warrant that Moses challenges on appeal. That warrant authorized the search of the house for items that

included weapons, ammunition, gun cases and shell casings, and it was supported by an affidavit pertinently stating:

> On September 20, 2007, [a named victim other than Dantavious Walker] was shot multiple times at [a specified location in] Atlanta, Fulton County, Georgia. During course of the hom[i]cide investigation, suspect[ ] Marco Moses was identified as one of several suspects in listed incident. Suspect[ ] Marco Moses was apprehended at listed location [for which the warrant was sought], and in plainview [sic], several gun cases were observed by arresting officers.

Moses argues that this information was too conclusory to demonstrate probable cause that evidence of a crime would be found at the house. We disagree. The magistrate could conclude from the affidavit that a homicide involving a firearm had occurred, that Moses was connected to that crime, that Moses had been found in the house for which the search warrant was sought, and that there might be guns at that house as evidenced by the gun cases seen in the house. Moreover, earlier that day the magistrate had received another affidavit in connection with another warrant that provided more information connecting Moses to the homicide; that affidavit stated that there was an outstanding arrest warrant against Moses for murder, that members of a regional law enforcement task force had obtained information from a confidential

10

informant with a history of reliability that Moses was at his mother's residence, and that a vehicle matching the description of Moses's vehicle was parked at the residence. The affidavit given in connection with the earlier warrant contained details, including information about the source and reliability of the information linking Moses to the homicide, that offset the alleged omissions in the affidavit given in connection with the warrant that Moses challenges on appeal. See *Palmer*, 285 Ga. at 79 (where information presented in affidavit is incomplete, magistrate may still have sufficient information to find that probable cause exists for issuance of warrant if omissions are offset by independent corroboration of criminal activity). Given that "[e]ven doubtful cases should be resolved in favor of upholding a magistrate's determination that a warrant is proper," id. (citation and punctuation omitted), the trial court did not err in denying Moses's motion to suppress on the merits.

(c) *Post-conviction suppression arguments.*

In his motion for new trial and at the hearing on that motion, Moses argued two additional grounds for the suppression of evidence obtained in the search of the house: that the warrant affidavit misrepresented the crime for which the evidence was being sought, and that the gun cases referred to in the warrant affidavit were discovered during an earlier, unlawful search at the time of Moses's arrest. Because

11

Moses did not raise these specific grounds until the post-conviction stage of the proceedings, he has waived appellate review of these arguments. See *Bryant v. State*, 288 Ga. 876, 894 (13) (b) (708 SE2d 362) (2011) (defendant waived appellate review of arguments for suppression of evidence that were not raised in motion to suppress); *Hodges v. State*, 319 Ga. App. 657, 658 (2) (a) (738 SE2d 111) (2013) (objection to evidence on specific ground at trial waived any objection to evidence on other grounds on appeal); *Proffitt v. State*, 181 Ga. App. 564, 566 (2) (353 SE2d 61) (1987) ("Grounds which may be considered on motion for new trial or on appeal are limited to those which were raised at trial.") (citations omitted).

3. *Improper impeachment.*

Over objection, the trial court allowed the state to question a detective about the statement that the victim, Walker, made to the officer shortly after the shooting, and to admit into evidence and publish to the jury a recording of that statement. Moses argues that this was error because the state did not establish the foundation required by former OCGA § 24-9-83 for the introduction of a witness's prior contradictory statement to impeach the witness.[1] That Code section, which was in

---

[1] Georgia's new Evidence Code addresses the introduction of a witness's prior inconsistent statement at OCGA § 24-6-613 (b).

effect at the time of Moses's trial, sets forth the procedure for impeaching a witness with a prior contradictory statement:

> A witness may be impeached by contradictory statements previously made by him as to matters relevant to his testimony and to the case. Before contradictory statements may be proved against him, . . . the time, place, person, and circumstances attending the former statements shall be called to his mind with as much certainty as possible. If the contradictory statements are in writing and in existence, they shall be shown to him or read in his hearing.

"The purpose of laying such a foundation is to give the witness the opportunity to explain or deny the prior contradictory statement." *Meschino v. State*, 259 Ga. 611, 614 (2) (b) (385 SE2d 281) (1989) (citation omitted).

The record shows that the state established the required foundation under former OCGA § 24-9-83. At trial, Walker denied seeing Moses at the scene of the shooting. In response to the prosecutor's questions, however, Walker testified that he recalled making a statement to a certain detective while at the hospital awaiting treatment shortly after the shooting. Through this testimony, Walker demonstrated that the state sufficiently called to his mind the time, place, person, and circumstances of the statement such that he could explain or deny the statement. See *Meschino*, 259 Ga. at 615 (c) (finding requirements of former OCGA § 24-9-83 were met where

13

witness "acknowledged making some kind of statement"). Compare *Daniely v. State*, 309 Ga. App. 123, 125-126 (2) (709 SE2d 274) (2011) (finding requirements of former OCGA § 24-9-83 were not met where "prior statement was not mentioned during [witness's] testimony and she was not asked any questions concerning the time, place, person, or circumstances attending it"). And in fact, Walker did explain the statement. Although he initially testified that he did not recall telling the detective that Moses was the van driver, later he admitted that he *did* identify Moses to the detective in his statement, but he explained that the identification was based on information he had heard from others and not what he himself had seen. His admission that he made the inconsistent statement to the detective did not render the statement inadmissible. Our Supreme Court has "rejected the assertion that a prior inconsistent statement is admissible only if the witness denies making the prior statement, but not if he simply disputes the truth of the earlier statement. There is no such denial requirement under [former] OCGA § 24-9-83." *Johnson v. State*, 289 Ga. 106, 108 (3) (709 SE2d 768) (2011) (citation and punctuation omitted).

Although Moses argues that the recording of his interview also "contained numerous facts that were not the subject of his direct examination, or the impeachment," he does not identify any specific instances of such facts, and it is not

14

apparent from this court's review of the recording that any reversible error occurred through its admission and publication.

4. *Unobjected-to trial errors.*

In several enumerations of error, Moses argues that the trial court committed various errors at trial: permitting the state to make improper comments and allegations during opening statement and closing argument; permitting the state to ask state's witnesses improper questions eliciting prejudicial testimony; and permitting the state to introduce bolstering hearsay evidence. Moses did not object to any of these alleged errors, however, and at the time of his 2011 trial plain error review did not apply to these claims. See generally *Durham v. State*, 292 Ga. 239, 240 (4) (734 SE2d 377) (2012) (discussing limited circumstances in which plain error review applied in appeals of criminal cases that were tried before OCGA § 24-1-103 (d) of the new Evidence Code went into effect on January 1, 2013). Consequently, Moses has waived appellate review of these claims of error. *Durham*, supra.

5. *Ineffective assistance of counsel.*

Moses argues that his trial counsel rendered ineffective assistance during both the pre-trial proceedings on his motion to suppress and at trial. He has not met his

burden of showing that any of the alleged errors of trial counsel amount to ineffective assistance.

To prevail on his ineffective assistance claim, Moses must show both deficient performance by trial counsel and actual prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984); *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985). If he "fails to meet his burden of proving either prong, then we do not need to examine the other prong." *Works v. State*, 301 Ga. App. 108, 114 (7) (686 SE2d 863) (2009) (citation omitted). On appeal, we "accept the trial court's factual findings and credibility determinations unless they are clearly erroneous, but . . . independently apply the legal principles to the facts." *Johnson v. State*, 290 Ga. 382, 383 (2) (721 SE2d 851) (2012) (citation omitted).

(a) *Counsel's effectiveness in moving to suppress evidence.*

Moses argues that he received ineffective assistance of counsel with regard to his motion to suppress the evidence obtained in the search of the house in which he was arrested. He contends that the attorney who represented him at the motion to suppress stage of the proceedings should have raised two additional arguments in support of the motion, and that the attorney who represented him at trial should have sought to reopen the motion to suppress to raise the additional arguments. He also

16

argues that his trial counsel failed to present additional evidence relevant to the standing issue. Because we have found that the evidence that was presented established Moses's standing to contest the search, see Div. 2 (a), supra, we need not address this argument.

(i) *The Franks v. Delaware argument.*

Moses contends that trial counsel should have argued that the first search warrant (which authorized the search of the house for Moses himself) was invalid under *Franks v. Delaware*, 438 U. S. 154 (98 SCt 2674, 57 LE2d 667) (1978), because its supporting affidavit contained an inaccuracy. The *Franks* decision provides a means for a defendant to challenge the veracity of a warrant affidavit, and to set aside false material therein, upon a showing that the false statement was made knowingly and intentionally, or with reckless disregard for the truth. Id. at 155-156. See generally *Watts v. State*, 274 Ga. 373, 374-375 (1) (552 SE2d 823) (2001) (discussing application of *Franks* in Georgia). Moses asserts that the affidavit falsely stated that he "had a valid warrant for murder out of the City of Atlanta, Warrant Number MC092707B." But Moses has not pointed to evidence substantiating any basis for arguing that the police officer who submitted the affidavit that contained this allegedly false statement deliberately or recklessly disregarded the truth. In fact, our

17

review of the record has unearthed no testimony whatsoever from that officer on that issue. Consequently, Moses has not met his burden of showing that his trial counsel's performance was deficient for failing to assert this argument in support of the motion to suppress. See *Coleman v. State*, 271 Ga. 800, 803 (5) (a) (523 SE2d 852) (1999).

(ii) *The fruit of the poisonous tree argument.*

Moses contends that his trial counsel should have argued that the evidence found pursuant to the warrant authorizing the search of the house for guns and other items was the fruit of the poisonous tree, because that warrant rested on the police having seen gun cases during an unlawful search of the house earlier in the day while they were arresting Moses. Again, Moses has failed to point to evidence substantiating his argument that the earlier search was unlawful. He argues in his appellate brief that it was unnecessary for the arresting officers to enter the house where they saw the gun cases because his arrest occurred *outside* the house. As the state argues, however, some circumstances can justify police officers to make a protective sweep of a residence after arresting a person there pursuant to a warrant. See *Inglett v. State*, 239 Ga. App. 524, 525 (1) (521 SE2d 241) (1999). The record contains no evidence as to whether such circumstances existed in this case. The arresting officers did not testify on the issue. Consequently, Moses has not met his

burden of showing that his trial counsel's performance was deficient for failing to assert this argument in support of the motion to suppress. See *Coleman*, 271 Ga. at 803 (5) (a).

(b) *Counsel's effectiveness at trial.*

Moses argues that his trial counsel was ineffective at trial by failing to object to "threat" evidence, to "veiled allegations that the [defense] lawyers were engaged in a cover-up" during the state's opening statement, and to a number of allegedly improper actions taken by the state during its closing arguments. Moses devotes very little space to these ineffectiveness arguments in his appellate brief, and in each case he has failed to meet his burden of showing that he received ineffective assistance of counsel.

(i) *"Threat" evidence.*

Moses argues that his trial counsel should have objected to questions that the state posed to some of its witnesses during direct examination that concerned whether the witnesses had felt threatened about cooperating with law enforcement or testifying. He also argues that his trial counsel should have objected to a police detective's testimony that law enforcement "had received information that there were multiple individuals that could be in danger due to some things that were going on

that were connected to this investigation." The state elicited this evidence to explain "the witness[es'] evasive and extremely reluctant conduct on the witness stand." *Coleman v. State*, 278 Ga. 486, 488 (3) (604 SE2d 151) (2004). As such, it was within the trial court's discretion to allow the alleged "threat" evidence, id., and trial counsel did not perform deficiently in failing to object to it. See *Hall v. State*, 292 Ga. 701, 704 (4) (d) (743 SE2d 6) (2013). Assuming without deciding that trial counsel should have made a hearsay objection to the detective's testimony, the testimony that "multiple individuals could be in danger" in connection with the investigation was extremely vague. Moses has not shown a reasonable likelihood that the outcome of the trial would have been different but for counsel's failure to object to the testimony. See *Strickland*, 466 U. S. at 694 (III) (B).

(ii) *Cover-up allegations.*

Moses argues that his trial counsel should have objected when, during the state's opening statement, a prosecutor stated that Moses and his co-defendant "did their best to cover up [their crime] in more than one way. One way was very sophisticated. And they hired lawyers, which they're entitled to do under our Constitution[.]" While we agree with Moses that these disparaging comments against counsel were not appropriate, see generally *Geoffrion v. State*, 224 Ga. App. 775, 780

20

(8) (c) (482 SE2d 450) (1997), overruled in part on other grounds by *Mullins v. State*, 270 Ga. 450, 451 (2) (511 SE2d 165) (1999), we are not persuaded with his argument that the prosecutor's opening statement so impugned his counsel's role in the judicial process that his counsel's failure to object to it constituted ineffective assistance of counsel. The authorities Moses cites in support of this claim do not hold otherwise. See *Scott v. State*, 305 Ga. App. 710 (700 SE2d 694) (2010); *Miller v. State*, 228 Ga. App. 754 (492 SE2d 734) (1997); *Geoffrion*, supra.

(iii) *Closing argument.*

After pointing to at least seven points in the state's closing argument that he contends were improper, Moses makes the cursory argument that "[d]efense counsel failed to object to any of these improper arguments, thus providing ineffective assistance of counsel in violation of the Sixth Amendment." He offers no specific argument for why his trial counsel was deficient for failing to object at these various points in the closing argument, and he does not address the prejudice prong at all in his appellate brief. Consequently, Moses has not met his burden of showing that he received ineffective assistance of counsel in connection with his trial counsel's decision not to object during the state's closing argument. See *Crumity v. State*, 321 Ga. App. 768, 772 (2) (743 SE2d 455) (2013) (trial court did not err in finding that

21

defendant failed to carry burden of proving he received ineffective assistance of counsel where defendant made no effort beyond cursory speculation to show how he was prejudiced).

*Judgment affirmed. Andrews, P. J., and Ray, J., concur.*