**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**February 26, 2016**

# In the Court of Appeals of Georgia

A15A1980. WILLIAMS v. THE STATE.

BARNES, Presiding Judge.

A jury convicted Moerise Williams of three counts of aggravated assault and possession of a firearm during the commission of a felony. Following the denial of his motion for new trial, he appeals on several grounds, arguing among other things that the trial court erred regarding evidentiary issues and contending that his trial counsel was ineffective. For the reasons that follow, we affirm.

Viewed in the light most favorable to the verdict, the evidence showed that shortly after midnight on September 26, 2007, Dantavious Walker drove to a neighborhood convenience store with two friends, Willie Wilson and Greg Hunt. Walker went into the store, Wilson got out to talk to some women, and Hunt dozed in the car. Shortly after Walker got back into the car, a passenger van pulled up in front of the car, and Hunt "had a vibe." As he urged Walker to drive off, Hunt saw a rifle barrel come out of the van, followed by a man who looked into the car and "went

to shooting the car up" with an assault rifle. A second man got out of the van and began firing a handgun at the car. Wilson ran from the scene. Hunt dove to the floorboard and Walker drove out of the parking lot in reverse, crossed the street, crashed through a wrought-iron fence, crossed a back yard and another street, and finally crashed into the side of a church building.

Walker was shot in the arm multiple times, but the other two victims escaped injury. During an interview with a detective at Grady Memorial Hospital, Walker identified his assailants as Williams and Prentice McNeil, and the van driver as Marco Moses. The police collected 21 shells from three different weapons in the parking lot, and the State introduced photographs of the victims' bullet-ridden car. A ballistics expert testified that 9 cartridges found in the parking lot were fired by a Ruger M14 found in McNeil's house. The other casings from the parking lot were fired from two other assault weapons found in McNeil's house.

Williams, McNeill, and Moses were indicted for aggravated assault against the three victims, but McNeill's trial was severed. Williams and Moses were tried

2

together and convicted, and this court affirmed Moses' convictions in *Moses v. State*, 328 Ga. App. 625 (760 SE2d 217) (2014).[1]

1. Williams argues that the trial court erred in denying his motion for directed verdict on the aggravated assault charge involving Willie Wilson, who had been standing outside of the car when the shooting occurred. The indictment charged Williams with committing an assault on Wilson "by shooting at, towards and in the direction of Willie Wilson with a firearm," but Williams argues that the State failed to introduce any evidence showing exactly where Wilson was located when the shooting began or that anyone pointed a weapon at him. But Hunt testified that the green van pulled up and "blocked us in," that Wilson was at the back of the car looking toward the front, and that he ran when the shooting began. This evidence was sufficient to authorize a rational trier of fact to find Williams guilty beyond a reasonable doubt of aggravated assault against Wilson. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Williams argues that his trial counsel was ineffective for failing to object to unspecified "threat evidence."

---

[1]This assault was preceded a week before by the murder of an associate of Hunt's. McNeill was also indicted for that murder, along with Matthew Mitchell, whose conviction was affirmed in *Mitchell v. State*, 293 Ga. 1 (742 SE2d 454) (2013).

3

To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was professionally deficient and that but for such deficient performance there is a reasonable probability that the result of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668, 695 (104 SCt 2052, 80 LE2d 674) (1984). To prove deficient performance, one must show that his attorney performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms. Courts reviewing ineffectiveness claims must apply a strong presumption that counsel's conduct fell within the wide range of reasonable professional performance. Thus, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course. If the defendant fails to satisfy either the "deficient performance" or the "prejudice" prong of the *Strickland* test, this Court is not required to examine the other.

(Citations and punctuation omitted.) *Redding v. State*, 297 Ga. 845, 850 (5) (778 SE2d 774) (2015).

While Williams does not identify the evidence to which he contends his trial counsel should have objected, it is obvious that evidence about perceived threats ran throughout the trial. For example, when Williams asked Walker during cross-examination whether he was nervous about being there, Walker replied that he was nervous because he could see in the courtroom "lots of faces I ain't never seen before

4

and I got my family down here with me. I ain't scared. It's just I don't want nothing to happen to my family at the end." In describing his concern that Walker had named the shooters, Hunt testified, "I was still out there, you know, I wasn't trying to make nothing happen to me." Wilson testified he did not want to be there at the trial because he "did not want to put [his] folks in this type of position." Wilson also admitted that if someone in jail cooperated with the police, "[a]nything bound to happen. Get killed, anything."

Threat evidence is admissible to explain a witness's conduct on the stand, even if it is not tied to a defendant. *Coleman v. State*, 278 Ga. 486, 488 (3) (604 SE2d 151) (2004). In this case, such evidence was particularly relevant, because on the stand, Walker completely disavowed his identification to the detective of Williams and Moses as two of the three shooters. He testified that when he told the detective that he had seen both Williams and Moses shooting at him, he had merely been repeating what he had heard from others rather than something he had actually seen. In fact, Walker even signed an affidavit prepared by Moses' previous trial counsel, in which Walker stated that his prior identification of Moses had been mistaken.

Absent Williams' identification of the particular evidence to which he contends his trial counsel should have objected, and in light of the facts as outlined above, we

5

conclude that the trial court did not err in admitting the witnesses' testimony we have identified above. See *Lindsey v. State*, 295 Ga. 343, 348 (3) (760 SE2d 170) (2014) (no error in permitting witness to testify regarding threatening phone calls despite fact that there was no direct evidence linking defendant with calls); *Coleman v. State*, 278 Ga. 486, 487-488 (3) (604 SE2d 151) (2004) (evidence of anonymous threat admissible to explain witness's evasive conduct on the stand). "Because this evidence was admissible, counsel's failure to object thereto does not constitute deficient performance." *Redding*, 297 Ga. at 851-852 (5) (a).

3. Williams argues that the State violated his Sixth Amendment right to counsel in its opening statement when it said,

> There's one more thing that this case is about. Because, when their mission failed, a team of assassins the facts and evidence will show had to cover it up, and they did their best to cover it up in more than one way. One way was very sophisticated. And they hired lawyers, which they're entitled to do under our constitution.

Williams contends that this statement "belittles" his constitutional rights, because hiring a lawyer is neither sophisticated nor a cover-up, and further contends that his trial counsel was ineffective for failing to object to it.

6

The context of this part of the State's opening statement — that the defendants tried to "cover up" their failed mission — becomes apparent from the next few sentences.

> But they approached the very victims that they tried to kill, and through their lawyers they had one of the victims sign affidavits saying, you know what, it wasn't them when that victim had already made a statement to law enforcement officials identifying this Marco Moses and the defendant Moerise Williams as two of the assassins who shot at him on September ... 26 of 2007. They — he came in to their offices months later and signed affidavits saying I recant my statement. That's part of the cover-up that they tried to do.

Williams also contends that various portions of the State's closing argument violated his right to a fair trial, and that his trial counsel was ineffective for failing to object to them.

Williams did not object to any of the assertedly improper portions of the State's opening statement or closing argument, which would have afforded the trial court the opportunity to take remedial action, and thus this court is precluded from considering the merits of his contentions regarding those statements. *Dixon v. State*, 298 Ga. 200, 203 (3) (779 SE2d 290) (2015).

7

Further, as to his contention that his trial counsel was ineffective in failing to object at this point in his opening statement, Williams simply argues that the opening statement improperly impugned his Sixth Amendment right to counsel and that the failure to object to portions of the closing argument constituted ineffective assistance of counsel. He does not address trial counsel's testimony in the motion for new trial hearing regarding why counsel might have abstained from objecting. Absent any analysis from Williams about whether the failures to object constituted deficient performance or whether such deficiencies prejudiced Williams, we find no merit in this enumeration. See *Moses*, 328 Ga. App. at 634 (5) (b) (iii).

4. Over objection, the trial court allowed the State to question a detective about the victim Walker's initial statement identifying Williams and his co-defendant as assailants, and to admit a recording of that statement into evidence. Williams argues that the trial court erred in admitting this evidence because the State failed to establish the foundation required by former OCGA § 24-9-83[2] for the introduction of introducing prior contradictory statements for impeachment purposes. That Code section set forth the following procedure:

---

[2]The current Evidence Code addresses the introduction of a witness's prior inconsistent statement at OCGA § 24-6-613 (b).

8

> A witness may be impeached by contradictory statements previously made by him as to matters relevant to his testimony and to the case. Before contradictory statements may be proved against him, … the time, place, person, and circumstances attending the former statements shall be called to his mind with as much certainty as possible. If the contradictory statements are in writing and in existence, they shall be shown to him or read in his hearing. …

Former OCGA § 24-9-83.

"The purpose of laying such a foundation is to give the witness the opportunity to explain or deny the prior contradictory statement."(Citation omitted.) *Meschino v. State*, 259 Ga. 611, 614 (2) (b) (385 SE2d 281) (1989). Here, the State established the required foundation under former OCGA § 24-9-83. At trial, Walker denied seeing Moses at the scene of the shooting. In response to the State's questions, however, Walker testified that he recalled making a statement to a certain detective while at the hospital awaiting treatment shortly after the shooting. Through this testimony, Walker demonstrated that the State sufficiently called to his mind the time, place, person, and circumstances of the statement such that he could explain or deny the statement. See *Meschino*, 259 Ga. at 615 (2) (c) (finding requirements of former OCGA § 24-9-83 were met where witness "acknowledged making some kind of statement"). Compare *Daniely v. State*, 309 Ga. App. 123, 125-126 (2) (709 SE2d 274) (2011) (finding

9

requirements of former OCGA § 24-9-83 were not met where "prior statement was not mentioned during [witness's] testimony and she was not asked any questions concerning the time, place, person, or circumstances attending it"). And here, in fact, Walker did explain the statement.

Although Walker initially testified that he did not recall telling the detective that Williams shot at him, he later admitted that he did identify Williams to the detective in his statement, explaining that he had just been repeating what other people had been telling him rather than stating what he himself had seen. Walker's admission that he made the inconsistent statement to the detective did not render the statement inadmissible. Our Supreme Court has "rejected the assertion that a prior inconsistent statement is admissible only if the witness denies making the prior statement, but not if he simply disputes the truth of the earlier statement. There is no such denial requirement under [former] OCGA § 24-9-83." (Citation and punctuation omitted.) *Johnson v. State*, 289 Ga. 106, 108 (3) (709 SE2d 768) (2011)

Williams also contends that allowing the detective to testify about Walker's inconsistent testimonial statement constituted a violation of his right to confront witnesses against him under *Crawford v. Washington*, 541 U.S. 36 (124 SCt 1354, 158 LE2d 177) (2004). This argument is misplaced, however, because the prohibition

10

in *Crawford* applies to the admission of testimonial statements by unavailable witnesses, not the admission of available witnesses for impeachment purposes. Walker was not unavailable, but had already testified and was subject to being recalled. "Therefore, contrary to [Williams'] contentions, *Crawford* is not applicable to this case." *McKnight v. State*, 283 Ga. 56, 58 (2) (i) (656 SE2d 830) (2008).

5. Finally, Williams contends that his co-defendant's trial counsel and the lead detective held a lengthy colloquy on Williams' post-arrest silence, and that his trial counsel was ineffective for failing to object. The State responds first that questions about Williams' post-arrest silence came from co-defendant's counsel, not from the State, and that co-defendant's counsel was attacking the credibility of a key witness for the State.

In its order denying Williams' motion for new trial, the trial court extensively quoted the exchange and found that "the questions were in the context of an attempt to eviscerate the investigator's credibility because the detective's testimony was different from what he wrote in his original report." The court concluded that, taken in context, the cross-examination of the detective by the co-defendant's counsel helped Williams, and thus it was reasonable for Williams' trial counsel not to object.

Williams argues that "there is no evidence in the record that trial counsel's decision to not object and move for a mistrial ... was strategic[, and that w]ithout such evidence, the court must conclude, therefore, that counsel's performance was deficient." But in the cases cited as support for that proposition, the trial counsel either testified that they had no strategic reason for failing to object (*Arellano v. State*, 304 Ga. App. 838, 841 (698 SE2d 362) (2010); *Johnson v. State*, 293 Ga. App. 728, 730 (2) (a) (667 SE2d 637) (2008)), or we found that the failure to object was based on counsel's objectively unreasonable misinterpretation of the testimony (*Hines v. State*, 277 Ga. App. 404, 407-408 (2) (626 SE2d 601) (2006)).

In this case, Williams did not ask trial counsel during the motion for new trial hearing whether he had strategic reasons not to object to this line of questioning. Thus, the record contains no evidence that trial counsel's decisions were *not* strategic. "The trial court's finding that trial counsel was not ineffective is supported by the presumption that, in the absence of contrary evidence, counsel's actions are presumed strategic in nature." *Mitchell v. State*, 242 Ga. App. 177, 182 (4) (c) (529 SE2d 169) (2000).

*Judgment affirmed. Ray and McMillian, JJ., concur.*